# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re | **Chapter 7** |
| **PEREGRINE FINANCIAL GROUP, INC.,** | **Case No. 12-27488** |
| **Debtor.** | **Hon. Carol A. Doyle** |

| | |
|---|---|
| **IRA BODENSTEIN, not personally, but as chapter 7 trustee for the estate of Peregrine Financial Group, Inc. d/b/a PFG Best,** | |
| **Plaintiff,** | |
| **v.** | **Adv. No. _____** |
| **CONNIE J. WASENDORF,** | |
| **Defendant.** | |

## COMPLAINT TO AVOID AND RECOVER TRANSFERS, AVOID OBLIGATIONS AND DISALLOW CLAIMS

Ira Bodenstein, not personally, but as chapter 7 trustee (the "Trustee") for the estate of Peregrine Financial Group, Inc. d/b/a PFG Best (the "Debtor" or "PFG"), by and through his undersigned counsel, respectfully states as follows for his Complaint to Avoid and Recover Transfers, Avoid Obligations and Disallow Claims (the "Complaint"):

### INTRODUCTION

1.       This is an adversary proceeding filed by the Trustee pursuant to 11 U.S.C. §§ 502, 544, 548, 550 and 749, the Iowa Uniform Fraudulent Transfer Act, IOWA CODE § 684.1 *et seq.*, and Fed. R. Bankr. P. 3007 and 7001(1), to (a) avoid prepetition obligations incurred fraudulently by the Debtor in favor of Connie J. Wasendorf ("Defendant"), (b) avoid and recover certain prepetition fraudulent transfers made by the Debtor to and for the benefit of Defendant and (c) disallow Defendant's claims against the Debtor.

## JURISDICTION AND VENUE

2.      On July 10, 2012 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"), thereby commencing the bankruptcy case, styled *In re Peregrine Financial Group, Inc.*, Case No 12-27488 (the "Bankruptcy Case").

3.      This adversary proceeding arises under the Bankruptcy Code and arises in the Bankruptcy Case.

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

5.      This adversary proceeding constitutes a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B), (H) and (O).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## PARTIES

7.      Ira Bodenstein is the duly appointed chapter 7 trustee of the Debtor's estate (the "Estate").

8.      From February 1990 through the Petition Date, PFG was a corporation organized under the laws of the State of Iowa.

9.      Upon information and belief, Defendant was at all times relevant to this Complaint and currently is a resident of the State of Iowa.

10.      At all times relevant to this Complaint through approximately December 30, 2010, Defendant was married to Russell L. Wasendorf, Sr. ("Wasendorf"), who was the Chief Executive Officer and Chairman of the Board of PFG from its inception.

## GENERAL BACKGROUND

**A.      Peregrine Financial Group, Inc. and Its Customers**

11.      PFG was a brokerage firm specializing in futures and foreign exchange trading with its headquarters located at One Peregrine Way, Cedar Falls, Iowa.  PFG also had offices and operations in Chicago, Illinois, California, Michigan, New York, and Canada.

12.      From its inception through the Petition Date, PFG was a registered futures commission merchant ("FCM") with the U.S. Commodity Futures Trading Commission (the "CFTC") and was at one time the second largest non-bank, non-clearing FCM in the United States.

13.      As of the Petition Date, the Debtor asserts it had more than 24,000 customers who are creditors of the Debtor.  Many of those customers have been creditors of the Debtor since before June 2007.

14.      As an FCM, the Debtor was required to maintain at least one segregated account for its customers' funds.  PFG maintained a segregated account, with an account number ending 845 (the "Customer Seg Account"), at U.S. Bank, N.A. ("US Bank").

15.      PFG was also required to file regular reports with the CFTC.

**B.      Russell L. Wasendorf, Sr.'s Fraud**

16.      On or about July 8, 2012, the CFTC notified Wasendorf that PFG's bank accounts were going to be electronically monitored.

17.      On July 9, 2012, Wasendorf attempted suicide in Cedar Falls, Iowa.  Prior to his attempted suicide, Wasendorf drafted two notes and a signed statement in which he admitted to embezzling millions of dollars over a period of nearly 20 years by using falsified bank statements, intercepting balance confirmation forms from regulators, forging a bank officer's signature and intentionally misreporting information to regulators.

18.    Wasendorf was arrested on July 13, 2012 and charged with numerous crimes, including lying to federal regulators and defrauding customers out of more than $100 million in a 20-year fraud.  The U.S. District Attorney for the Northern District of Iowa filed a criminal complaint against Wasendorf in the United States District Court for the Northern District of Iowa, Case No. CR 12-2021 (the "Criminal Case"), regarding Wasendorf's fraudulent conduct.

19.    In September 2012, Wasendorf entered into a voluntary plea agreement in the Criminal Case, whereby Wasendorf pled guilty to four criminal charges, including lying to regulators, embezzlement and mail fraud.  In the plea agreement, Wasendorf admitted to embezzling and misappropriating in excess of $100,000,000 in PFG's customer funds by, among other things, secretly withdrawing money from the Customer Seg Account and falsifying account statements.

20.    At all times relevant to this Complaint, the actual balance of the Customer Seg Account was approximately $200,000,000 less than the balance Wasendorf fraudulently reported on the forged PFG bank statements.

**C.    Peregrine Financial Group, Inc.'s Financial Condition**

21.    On July 10, 2012, the Trustee was appointed and tasked with winding down PFG's business operations and preserving, liquidating, and distributing PFG's assets to its creditors.

22.    As set forth in the Debtor's schedules, PFG's total assets approximated $270,000,000 (including customer funds) and its liabilities approximated $525,000,000 as of the Petition Date.

23.    Upon information and belief, the value of PFG's consolidated assets as of December 31, 2011 did not exceed $450,000,000, including customer funds, whereas its liabilities exceeded $598,000,000.

24.     Upon information and belief, the value of PFG's consolidated assets as of December 31, 2010 did not exceed $475,000,000, including customer funds, whereas its liabilities exceeded $600,000,000.

25.     Because of Wasendorf's fraudulent activity, substantial assets were diverted from PFG and, upon information and belief, PFG's liabilities exceeded the value of its assets by more than $100,000,000 at all times relevant to this Complaint.

**D.      Wasendorf's Divorce from Defendant**

26.     On December 30, 2010, Wasendorf and Defendant divorced pursuant to that Decree of Dissolution of Marriage (the "Decree") entered by the Iowa District Court in and for Black Hawk County.

27.     In connection with their divorce Wasendorf and Defendant entered into various agreements regarding the division of their alleged assets.

28.     Defendant's share of their alleged divisible net worth was calculated to be $4,869,692 ("Defendant's Divisible Share").

29.     Wasendorf was personally obligated to pay Defendant's Divisible Share to Defendant.

30.     Wasendorf caused PFG and its customers to incur obligations and make transfers to Defendant in satisfaction of Defendant's Divisible Share.

31.     In particular, Wasendorf caused PFG to pay Defendant as "severance" an annual salary of $240,000 for 10 years, totaling $2,400,000.

32.     To satisfy the balance of the Defendant's Divisible Share Wasendorf agreed to make a lump sum property settlement payment of $2,469,692 to Defendant within 15 days of the entry of the Decree.  Wasendorf did not personally make that lump sum property settlement payment.

33.     Instead, on December 31, 2010, Wasendorf fraudulently authorized a transfer from the Customer Seg Account to Defendant in the amount of $2,469,692, and such transfer was received by Defendant on the same day (the "Lump Sum Payment").

34.     To document the "severance" component of his divorce settlement with Defendant, Wasendorf caused PFG to enter into that certain Severance Agreement dated December 21, 2010 by and between PFG and Defendant (the "Severance Agreement"). In the Severance Agreement, PFG agreed *inter alia* to (a) provide Defendant with 120 months of severance payments at Defendant's compensation rate at the time of termination and (b) continue at PFG's cost during the 120-month severance period (i) Defendant's full health and medical insurance coverage and (ii) all of Defendant's other benefits. The total value of the obligations undertaken by PFG under the Severance Agreement exceeded $2,500,000.

35.     Between December 21, 2010 and the Petition Date (the "Severance Period"), PFG made monthly payments under the Severance Agreement exceeding $20,000 to and for the benefit of Defendant (the "Monthly Payments"). The sum of the Monthly Payments exceeded $360,000 during the Severance Period. The Trustee has not made any of the Monthly Payments since the Petition Date.

## COUNT I

### (Avoidance and Recovery of the Lump Sum Payment
### Pursuant to 11 U.S.C. §§ 544(b)(1), 548(a)(1)(B), 550 and 764)

36.     The Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if fully restated herein.

37.     The Lump Sum Payment was a transfer by PFG of its customers' property.

38.     The Lump Sum Payment was not a transfer by PFG of Defendant's property.

39.     The Lump Sum Payment was not a transfer by PFG of Wasendorf's property.

40.     Pursuant to 11 U.S.C. § 764(a), the Lump Sum Payment is deemed to have been the Debtor's property.

41.     The Debtor did not receive any value in exchange for the Lump Sum Payment.

42.     The Lump Sum Payment was made while the Debtor was insolvent or caused the Debtor to become insolvent as a result of such transfer.

43.     The Lump Sum Payment left the Debtor with unreasonably small capital.

44.     The Lump Sum Payment was made while the Debtor intended to incur, or believed that it had incurred, debts that it would not be able to pay as they became due.

45.     Defendant was the initial transferee of the Lump Sum Payment.

46.     By reason of the foregoing, the Lump Sum Payment or its value is avoidable and recoverable pursuant to 11 U.S.C. §§ 544(b)(1), 548(a)(1)(B), 550 and 764(a) and IOWA CODE §§ 684.4(1)(b) and 684.5(1).

47.     On November 26, 2012, the Trustee's counsel sent a letter to Defendant's counsel, demanding that Defendant promptly remit the Lump Sum Payment to the Estate.

48.     Defendant has not repaid the Lump Sum Payment.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in his favor and against Defendant on Count I as follows: (i) declaring that the Lump Sum Payment is an avoidable transfer pursuant to 11 U.S.C. §§ 544(b)(1), 548(a)(1)(B), and 764(a) and IOWA CODE §§ 684.4(1)(b) and 684.5(1); (ii) declaring that the Trustee may recover the Lump Sum Payment from Defendant pursuant to 11 U.S.C. § 550; (iii) ordering Defendant to pay to the Estate the value of the avoidable transfer in an amount not less than $2,469,692, plus interest from December 31, 2010, costs and fees to the extent permitted by applicable law; and (iv) granting such other and further relief as the Court deems just and equitable.

## COUNT II

**(Avoidance of PFG's Incurrence of Obligations
Pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B))**

49.     The Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 35 above, as if fully restated herein.

50.     In connection with the divorce of Wasendorf and Defendant, PFG incurred various obligations to and for the benefit of Defendant including, without limitation, the Severance Agreement (collectively, the "Incurred Obligations").

51.     At the time of the Severance Agreement, Defendant was an insider.

52.     The Severance Agreement constitutes an employment agreement within the meaning of section 548(a)(1)(B)(ii)(IV) of the Bankruptcy Code.

53.     The Severance Agreement was not executed in the ordinary course of PFG's business.

54.     Defendant purported to release claims against PFG and its affiliates in exchange for certain of the Debtor's promises in the Severance Agreement.

55.     At the time of the Severance Agreement, Defendant did not have any valid claims against PFG or its affiliates.

56.     The Debtor did not receive reasonably equivalent value in exchange for the Incurred Obligations.

57.     The Incurred Obligations were incurred while the Debtor was insolvent or caused the Debtor to become insolvent as a result of such obligations.

58.     The Debtor had unreasonably small capital at the time of the Incurred Obligations.

59.     The Incurred Obligations were incurred while the Debtor intended to incur, or believed that it had incurred, debts that it would not be able to pay as they became due.

60.     By reason of the foregoing, the Incurred Obligations are avoidable pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B) and Iowa Code §§ 684.4(1)(b) and 684.5(1).

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in his favor and against Defendant on Count II as follows: (i) declaring that the Incurred Obligations and the Severance Agreement are avoidable pursuant to 11 U.S.C. §§ 544(b) and 548 and Iowa Code §§ 684.4 and 684.5; and (ii) granting such other and further relief as the Court deems just and equitable.

## COUNT III

**(Avoidance and Recovery of Constructively Fraudulent Transfers
Pursuant to 11 U.S.C. §§ 544(b)(1), 548(a)(1)(B) and 550)**

61.     The Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 60 above, as if fully restated herein.

62.     Between May 1, 2010 and the Petition Date (the "Avoidance Period"), in connection with the Incurred Obligations PFG made numerous payments to and for the benefit of Defendant from PFG's funds in an aggregate amount exceeding $520,000 (the "Transfers") including, without limitation, the Monthly Payments under the Severance Agreement.

63.     During the Avoidance Period, PFG paid Defendant approximately $240,000 annually to satisfy, in part, Wasendorf's obligation to pay Defendant's Divisible Share.

64.     During the Avoidance Period, and notwithstanding the Severance Agreement, Defendant was on PFG's payroll and performed certain services for PFG on an as-needed basis. Defendant was not, however, a full-time employee of the Debtor during that time.

65.     With the possible exception of Wasendorf, Defendant did not directly report to anyone within the Debtor's organization.

66.     The Transfers were unreasonably high compensation for the limited ad hoc services that Defendant provided to PFG.

67.     PFG did not receive reasonably equivalent value in exchange for the Transfers.

68.     Each of the Transfers was made while the Debtor was insolvent or caused the Debtor to become insolvent as a result of such transfer.

69.     The Debtor had unreasonably small capital at the time of each of the Transfers.

70.     Each of the Transfers was made while the Debtor intended to incur, or believed that it had incurred, debts that it would not be able to pay as they became due.

71.     Defendant was the initial transferee of the Transfers or the person for whose benefit the Transfers were made.

72.     By reason of the foregoing, the Transfers or their value are avoidable and recoverable pursuant to 11 U.S.C. §§ 544(b)(1), 548(a)(1)(B) and 550 and Iowa Code §§ 684.4(1)(b) and 684.5(1).

73.     Defendant has not repaid any of the Transfers to the Debtor or the Estate.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in his favor and against Defendant on Count III as follows: (i) declaring that the Transfers are avoidable transfers pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B) and Iowa Code §§ 684.4(1)(b) and 684.5(1); (ii) declaring that the Trustee may recover the Transfers from Defendant pursuant to 11 U.S.C. § 550; (iii) ordering Defendant to pay to the Estate the aggregate value of the Transfers in an amount not less than $520,000, plus interest from the date of each avoidable transfer, costs and fees to the extent permitted by applicable law; and (iv) granting such other and further relief as the Court deems just and equitable.

## COUNT IV

**(Avoidance and Recovery of Fraudulent Transfers and Avoidance of Fraudulent Obligations Pursuant to 11 U.S.C. §§ 544(b)(1), 548(a)(1)(A) and 550)**

74.     The Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 73 above, as if fully restated herein.

75.     The Lump Sum Payment was made with actual intent to hinder, delay, or defraud one or more entities to which PFG was or became, on or after the date such Lump Sum Payment was made, indebted.

76.     Each of the Transfers was made with actual intent to hinder, delay, or defraud one or more entities to which PFG was or became, on or after the date each such transfer was made, indebted.

77.     The Incurred Obligations, including the Severance Agreement, were undertaken with actual intent to hinder, delay, or defraud one or more entities to which PFG was or became, on or after the date such obligations were incurred, indebted.

78.     By reason of the foregoing, the Lump Sum Payment and the Transfers, or their value, are avoidable and recoverable pursuant to 11 U.S.C. §§ 544(b)(1), 548(a)(1)(A) and 550 and IOWA CODE §§ 684.4(1)(a).

79.     By reason of the foregoing, the Incurred Obligations are avoidable pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(A) and IOWA CODE §§ 684.4(1)(a).

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in his favor and against Defendant on Count IV as follows: (i) declaring that the Lump Sum Payment and the Transfers are avoidable transfers and the Incurred Obligations are avoidable obligations pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(A) and IOWA CODE §§ 684.4(1)(a); (ii) declaring that the Trustee may recover the Lump Sum Payment and the Transfers from Defendant pursuant to 11 U.S.C. § 550; (iii) ordering Defendant to pay to the Estate the aggregate value of the avoidable transfers in an amount not less than $2,989,692, plus interest from the date of each avoidable transfer, costs and fees to the extent permitted by applicable law; and (iv) granting such other and further relief as the Court deems just and equitable.

## COUNT V

### (Unjust Enrichment)

80.     The Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 79 above, as if fully restated herein.

81.     As a result of the Lump Sum Payment, the Transfers and the fraud perpetrated by Wasendorf, Defendant wrongfully received benefits from PFG that should have inured to the benefit of PFG and its creditors.

82.     Defendant has been unjustly enriched and equity requires that Defendant disgorge and pay the amounts by which Defendant has been unjustly enriched.

WHEREFORE, the Trustee respectfully requests that this Court enter judgment in his favor and against Defendant on Count V as follows: (i) ordering Defendant to pay to the Estate the aggregate value of wrongfully received benefits in an amount not less than $2,989,692, plus interest, costs and fees to the extent permitted by applicable law; and (ii) granting such other and further relief as the Court deems just and equitable.

## COUNT VI

### (For Disallowance of Defendant's Claims Pursuant to 11 U.S.C. § 502(d))

83.     The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 82 hereof, as if fully restated herein.

84.     On October 9, 2012, Defendant filed a Physical Precious Metals Customer Claim Form in the Bankruptcy Case, which was assigned claim number 2224 ("Claim 2224"), and in which Defendant asserted a claim in the estimated amount of $1,830.00.

85.     On November 13, 2012, Defendant filed an additional Physical Precious Metals Customer Claim Form in the Bankruptcy Case, which was assigned claim number 10125

("Claim 10125"), and in which Defendant amended Claim 2224 to assert a claim in the amount of $1,799.52.

86.     On November 30, 2012, Defendant filed a Proof of Claim in the Bankruptcy Case, which was assigned claim number 12474 ("Claim 12474"), pursuant to which Defendant asserted an unsecured claim under the Severance Agreement in the aggregate amount of $2,430,964.32.   Defendant further asserted that $11,725.00 of Claim 12474 was entitled to priority under 11 U.S.C. § 507(a)(4).

87.     As a result of the Lump Sum Payment and the Transfers, Defendant is the transferee of transfers that are avoidable under §§ 544(b) and 548 and IOWA CODE §§ 684.4 and 684.5, and the Trustee may recover property from Defendant under 11 U.S.C. § 550.

88.     To the extent that Defendant fails to repay the Lump Sum Payment and the Transfers, any claim of Defendant, including Claim 2224, Claim 10125 and Claim 12474 (collectively, the "Claims"), must be disallowed pursuant to 11 U.S.C. § 502(d).

89.     Defendant has not paid or surrendered to the Trustee the value of the Lump Sum Payment and the Transfers, and, therefore, any claim that Defendant has filed against the Debtor, including the Claims, must be disallowed.

WHEREFORE, the Trustee requests that this Court enter judgment in its favor and against the Defendant on Count VI as follows: (i) disallowing any and all claims of Defendant against the Estate; and (ii) granting such other and further relief as the Court deems just and equitable.

## COUNT VII
### (For Disallowance of Claim 2224 and Claim 12474 Pursuant to 11 U.S.C. § 502(b))

90.     The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 89 hereof, as if fully restated herein.

91.     Claim 2224 and Claim 10125 assert the same basis for Defendant's alleged claim.

92.     Defendant filed Claim 10125 to amend and replace Claim 2224 and, therefore, Claim 2224 is duplicative of Claim 10125.

93.     Claim 2224 should be disallowed.

94.     Claim 12474 asserts a claim regarding the Severance Agreement and the Incurred Obligations.

95.     The Incurred Obligations are avoidable, and Claim 12474 must be disallowed accordingly.

96.     This Complaint is not intended to be, nor should it be construed as, a waiver of the Trustee's rights to object to the Claims or any other claims asserted by Defendant for any reason including, without limitation, any bases set forth in 11 U.S.C. §§ 502(a)-(j), and such rights are expressly preserved.

WHEREFORE, the Trustee requests that this Court enter judgment in its favor and against the Defendant on Count VII as follows: (i) disallowing any and all claims of Defendant against the Estate; and (ii) granting such other and further relief as the Court deems just and equitable.

                                        Respectfully submitted,

                                        IRA BODENSTEIN, not personally, but as
                                        chapter 7 trustee for the estate of Peregrine
                                        Financial Group, Inc. d/b/a PFG Best

Dated:  January 25, 2013                By:/s/ *Mark L. Radtke*
                                            One of his attorneys

Robert M. Fishman (#3124316)
Mark L. Radtke (#6275738)
David R. Doyle (#6303215)
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654
Tel: (312) 541-0151