## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| PEREGRINE FINANCIAL GROUP, INC., | ) | Case No. 12-27488 |
| | ) | |
| | ) | Honorable Judge Carol A. Doyle |
| Debtor. | ) | |
| | ) | Hearing Date: December 11, 2014 |
| | ) | Hearing Time: 10:00 a.m. |

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on Thursday, **December 11, 2014 at 10:00 a.m.**, the undersigned shall appear before the Honorable Judge Carol A. Doyle, in Courtroom 742, 219 South Dearborn Street, Chicago, Illinois, and then and there present the **Trustee's Motion for Entry of an Order (1) Authorizing up to a 100% Distribution on Allowed 30.7 Customer Claims and an Interim Distribution on Allowed 4d Customer Claims and (2) Authorizing the Allocation of Certain Settlement Proceeds to the 4d Customer Estate**, at which time you may appear if you deem fit.

Respectfully submitted,

Ira Bodenstein, not personally, but as chapter 7 trustee for the estate of Peregrine Financial Group, Inc.

Dated: December 4, 2014

By: ___ */s/ Allen J. Guon* ___
One of his attorneys

Robert M. Fishman (#3124316)
Allen J. Guon (#6244526)
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL 60654
Phone: (312) 541-0151

{10403-001 MOT A0391343.DOC 4}

## CERTIFICATE OF SERVICE

Allen J. Guon certifies that he caused to be served a true copy of the above and foregoing **Notice Of Motion** and **Trustee's Motion for Entry of an Order (1) Authorizing up to a 100% Distribution on Allowed 30.7 Customer Claims and an Interim Distribution on Allowed 4d Customer Claims and (2) Authorizing the Allocation of Certain Settlement Proceeds to the 4d Customer Estate** upon the attached Electronic Mail Notice List through the ECF System and on the attached Service List in the manner so indicated on this 4th day of December 2014.

*/s/ Allen J. Guon*

**MAILING INFORMATION FOR CASE 12-27488**

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Gregory C Armstrong   gregory.armstrong@armstronglawgroup.com
- Terence G Banich   tbanich@shawfishman.com, kbobb@shawfishman.com
- Stacie E Barhorst   sbarhorst@kpglaw.com
- Lawrence M. Benjamin   lbenjamin@ngelaw.com, rwills@ngelaw.com
- Stephen T. Bobo   sbobo@reedsmith.com
- Ira Bodenstein   iratrustee@shawfishman.com, IL29@ecfcbis.com;cowens@shawfishman.com
- Patrick W Carothers   pcarothers@leechtishman.com, ghauswirth@leechtishman.com;bankruptcy@leechtishman.com;dtomko@leechtishman.com
- Paul Catanese   pcatanese@mcguirewoods.com, docket@mcguirewoods.com
- David E Cohen   dcohen@fishercohen.com
- Brooke E Conner   bconner@vedderprice.com, ecfdocket@vedderprice.com;cpotter@vedderprice.com
- Jerome F Crotty   jcrotty@rieckcrotty.com, bhenry@rieckcrotty.com
- Carrie E Davenport   cdavenport@shawfishman.com, kbobb@shawfishman.com
- Michael C Dell'Angelo   mdellangelo@bm.net, rwalton@bm.net
- David R Doyle   ddoyle@shawfishman.com, kjanecki@shawfishman.com
- Michael M. Eidelman   meidelman@vedderprice.com, ecfdocket@vedderprice.com
- Joseph O Enright   joenright@ohfdlaw.com
- Robert M Fishman   rfishman@shawfishman.com, kjanecki@shawfishman.com
- Geoffrey S. Goodman   ggoodman@foley.com, egreen@foley.com;khall@foley.com
- Ava Gould   agould@cftc.gov
- Gordon E. Gouveia   ggouveia@shawfishman.com, kjanecki@shawfishman.com
- Joshua M Grenard   jgrenard@mayerbrown.com, courtnotification@mayerbrown.com
- Allen J Guon   aguon@shawfishman.com, cowens@shawfishman.com
- John W Guzzardo   jguzzardo@shawfishman.com, jhampton@shawfishman.com
- Bernard A Henry   bhenry@rieckcrotty.com
- David Paul Holtkamp   dholtkamp@wfactorlaw.com, gsullivan@wfactorlaw.com;gsullivan@ecf.inforuptcy.com;dholtkamp@ecf.inforuptcy.com;nbouchard@wfactorlaw.com
- Stephanie K. Hor-Chen   schen@vedderprice.com, ecfdocket@vedderprice.com
- Allison Hudson   ahudson@shawfishman.com, jhampton@shawfishman.com

- Kevin M Hyde    khyde@shawfishman.com, kbobb@shawfishman.com
- Paula K. Jacobi    pjacobi@btlaw.com, jsantana@btlaw.com;jbennett@btlaw.com
- Cindy M. Johnson    cjohnson@jnlegal.net, KLindsey@jnlegal.net
- Andrew Jones    andrew@ajoneslaw.com
- Patrick M Kinnally    pkinnally@kfkllaw.com, mlenert@kfkllaw.com;tdegrado@kfkllaw.com
- Thomas S Kiriakos    tkiriakos@mayerbrown.com, Courtnotification@mayerbrown.com
- James C. Koutoulas    jk@typhoncap.com
- Vincent E. Lazar    vlazar@jenner.com, docketing@jenner.com;thooker@jenner.com
- Randall M Lending    rlending@vedderprice.com,
  trobinson@vedderprice.com;ecfdocket@vedderprice.com
- Kyle A Lindsey    klindsey@jnlegal.net, cjohnson@jnlegal.net
- James J McNamara    jmcnamara@srcattorneys.com
- Michael C. Moody    mmoody@orourkeandmoody.com,
  firm@orourkeandmoody.com,morourke@orourkeandmoody.com
- Michael J O'Rourke    morourke@orourkeandmoody.com, firm@orourkeandmoody.com
- James A Pope    jpope@popelegal.com
- Mark L Radtke    mradtke@shawfishman.com, jbunton@shawfishman.com
- Jack A Raisner    JAR@outtengolden.com,
  jxh@outtengolden.com;kdeleon@outtengolden.com;kcarter@outtengolden.com
- Marc S Reiser    mreiser@shawfishman.com, jhampton@shawfishman.com
- Robert E Richards    robert.richards@dentons.com, NDIL_ECF@dentons.com
- Peter J Roberts    proberts@shawfishman.com
- Steven Robinson    steven.robinson@sidley.com, steve.robinson@gmail.com
- Mark J Rose    mjroseesq@aol.com
- Patrick F Ross    pfross@uhlaw.com,
  kburde@uhlaw.com;rjanczak@uhlaw.com;sbmiller@uhlaw.com;jtruskusky@uhlaw.com
- Rene S Roupinian    rsr@outtengolden.com,
  jxh@outtengolden.com;kdeleon@outtengolden.com;kcarter@outtengolden.com
- Richard A. Saldinger    rsaldinger@shawfishman.com, msalazar@shawfishman.com
- Jessica M Scheller    jscheller@atg.state.il.us
- Vincent Paul Schmeltz III    vschmeltz@btlaw.com, jzipfel@btlaw.com;jlennon@btlaw.com
- Sean T Scott    stscott@mayerbrown.com, mlotito@mayerbrown.com
- Scott A Semenek    scott.semenek@faegrebd.com, droberg@faegrebd.com
- Brian L Shaw    bshaw@shawfishman.com, jbunton@shawfishman.com
- Peter A Siddiqui    peter.siddiqui@kattenlaw.com
- Alan P. Solow    alan.solow@dlapiper.com,
  docketingchicago@dlapiper.com;oksana.koltko@dlapiper.com
- Anne W Stukes    astukes@cftc.gov, ogcecf@cftc.gov
- William W Thorsness    wthorsness@vedderprice.com,
  ecfdocket@vedderprice.com;ahesla@vedderprice.com
- Rue K Toland    rtoland@mayerbrown.com, docketrequests@mayerbrown.com
- John Edward Waters    john.waters@iowa.gov
- Thomas C. Wolford    twolford@ngelaw.com, ecfdocket@ngelaw.com;mmirkovic@ngelaw.com
- Stefanie Wowchuk McDonald    stefanie.mcdonald@dentons.com, NDIL_ECF@dentons.com
- Joseph R. Ziccardi    jziccardi@ziccardilaw.com
- Jonathan Zinman    jzinman@soluslp.com

**Parties Served Via U.S. Mail**

CRT Special Investments LLC
Attn: Joseph Sarachek
262 Harbor Drive
Stamford, CT 06902

**Parties Served Via E-Mail**

Gaivesville Coins, Inc.
c/o Stephanie C. Lieb, Esq.
101 E. Kennedy Blvd., Ste. 2700
Tampa, FL 33602
rcolton@trenam.com
slieb@trenam.com

Joseph M. Russell
JP Morgan Chase Bank NA
10 S. Dearborn Street
Chicago, IL 60603
Joe.russell@jpmchase.com

Gilbert B. Weisman
Becket & Lee LLP
16 General Warren Blvd.
Malvern, PA 19355
Notices@becket-lee.com

Alicia Martin
Attn: Steven R. Lehr, Esq.
Steven R. Lehr, P.C.
33 Clinton Road, Ste. 100
West Caldwell, NJ 07006
slehr@lehrlaw.com

Larry Lefoldt
Lefoldt & Co., P.A.
690 Towne Center Blvd.
Ridgeland, MS 39158
mllefoldt@lefoldt.com

John B. Connor
John B. Connor, P.L.C.
1033 N. Fairfax St., Ste. 310
Alexandria, VA 22314
jack@johnbconnor.com

Outten & Golden LLP
Attn: Jack Raisner/Rene Roupinian
3 Park Ave., 29th Floor
New York, NY 10016
rsr@outtengolden.com
jar@outtengolden.com

Stephen Mertz
Michael Stewart
Faegre Baker Daniels LLP
90 South 7th St., Ste. 2200
Minneapolis, MN 55402
stephen.mertz@faegrebd.com
Michael.stewart@faegrebd.com

William L. Wallander
John Paul K. Napier
Vinson & Elkins L.L.P.
2001 Ross Avenue, Ste. 3700
Dallas, TX 75201
jnapier@velaw.com
bwallander@velaw.com

Lazonia Clark
Chase Paymentech Solutions, LLC
14221 Dallas Parkway
Building II
Dallas, TX 75254-2942
Lazonia.clark@chasepaymentech.com

Vivian Drohan
Drohan Lee LLP
489 Fifth Avenue
New York, NY 10017
vdrohan@dlkny.com

Scott Williamson
Deputy Regional Counsel
525 W. Monroe St., Ste. 1100
Chicago, IL 60661
swilliamson@cftc.gov

Robert Wasserman
Chief Counsel
CFTC
1155 21st St. N.W.
Washington, D.C. 20581
rwasserman@cftc.gov

Pat DiMaria
pdimaria@pfgbest.com

Gretchen M. Silver
Office of US Trustee
219 S. Dearborn, Ste. 873
Chicago, IL 60604
Gretchen.silver@usdoj.gov

Keith Kaiser
Russell Monco
PricewaterhouseCoopers
One North Wacker Drive
Chicago, IL 60606
Keith.kaiser@us.pwc.com
Russell.monco@us.pwc.com

Andrea M. Momnie
Philip J. Hendel
Hendel & Collins, P.C.
101 State Street
Springfield, MA 01103
amomnie@hendelcollins.com

Rosemary Hollinger
Regional Counsel
CFTC
525 W, Monroe, Ste. 1100
Chicago, IL 60661
rhollinger@cftc.gov

Joseph Corrigan
Iron Mountain Information
745 Atlantic Avenue
Boston, MA 02111
bankruptcy2@ironmountain.com

Roy Thompson
15938 SW Quarry Rd., Ste. B-6
Lake Oswego, OR 97035
roythompson@comcast.net

Mark D. Sherrill
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue NW
Washington, DC 20004-2415
mark.sherrill@sutherland.com

Susan O'Mera
someara@pfgbest.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| PEREGRINE FINANCIAL GROUP, INC., | ) | Case No. 12-27488 |
| | ) | |
| | ) | Honorable Judge Carol A. Doyle |
| Debtor. | ) | |
| | ) | Hearing Date: December 11, 2014 |
| | ) | Hearing Time: 10:00 a.m. |

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (1) AUTHORIZING UP TO A 100% DISTRIBUTION ON ALLOWED 30.7 CUSTOMER CLAIMS AND AN INTERIM DISTRIBUTION ON ALLOWED 4D CUSTOMER CLAIMS AND (2) AUTHORIZING THE ALLOCATION OF CERTAIN SETTLEMENT PROCEEDS TO THE 4D CUSTOMER ESTATE**

Ira Bodenstein, not personally, but as chapter 7 trustee ("Trustee") for the estate of Peregrine Financial Group, Inc. d/b/a PFG Best ("Debtor"), pursuant to 11 U.S.C. §§ 105(a) and 766 and 17 C.F.R. §§ 190.01 through 190.10, requests the entry of an order authorizing and approving (1) up to a 100% distribution to the holders of Allowed 30.7 Customer Claims and up to a 44% interim distribution to the holders of Allowed 4d Customer Claims[1] and (2) allocating $9,756,934.58 in settlement proceeds recovered from Connie Wassendorf and Tom and Kay Herrmann ("Herrmann") to the 4d Customer estate ("4d Estate") for distribution to 4d Customers. In support of the motion, the Trustee respectfully states as follows:

## BACKGROUND

A.      **The Debtor's Bankruptcy Case**

1.      On July 10, 2012 ("Petition Date"), the Debtor filed a voluntary case under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. ("Bankruptcy Code"),

---

[1] As discussed in detail below, with respect to those holders of Allowed Futures Claims that received all Prior Distributions, the proposed incremental distributions will be 15% to Allowed 30.7 Customer Claims and 7% to Allowed 4d Customer Claims.

thereby commencing the above-entitled case ("Case").

2.    Ira Bodenstein is the duly appointed chapter 7 trustee of the Debtor's bankruptcy estate ("Estate").

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

**B.    Overview of the Debtor's Business**

**1.    Futures Customer Business**

4.    The Debtor was registered as futures commission merchant ("FCM") with the Commodity Futures Trading Commission ("CFTC") and operated a futures brokerage customer business pursuant to its FCM registration. The Debtor also had separate business lines for foreign exchange customers, physical precious metals customers and over-the-counter precious metals derivatives customers. As of the Petition Date, the Debtor had over 24,000 aggregate customer accounts over all of its lines of business, including approximately 17,000 futures customer accounts.

5.    The Debtor's customers included commodity futures and option customers, i.e., customers with accounts opened for the purpose of trading futures or options on futures on a U.S. futures exchange under Section 4d of the Commodity Exchange Act ("4d Customers"). *See* 7 U.S.C. § 6d. The Debtor's customers also included foreign futures customers, i.e., customers with accounts opened for the purpose of trading futures or options on futures on an exchange located outside of the U.S. under CFTC Rule 30.7 ("30.7 Customers"). *See* 17 C.F.R. § 30.7. Additionally, the Debtor's futures customers included customers with delivery accounts, i.e., accounts denominated as such at the Debtor and through which deliveries of physical

commodities could occur with respect to expiring futures contracts ("Delivery Customers," and

together with 4d Customers and 30.7 Customers, the "Futures Customers").

6.      The Court approved the Trustee's recognition of separate account classes of 4d

Customers, 30.7 Customers and Delivery Customers pursuant to the *Order Approving*

*Recognition if Futures, Foreign Futures and Delivery Account Classes of Customers* entered on

March 20, 2013. (Dkt. No. 598.)

### 2.    Forex And Metals Businesses

7.      In connection with its FCM registration, the Debtor carried foreign exchange (i.e.,

forex) trading accounts for customers, who were principally "retail" in nature ("Forex

Customers"), through which such customers traded various types of forex contracts directly with

the Debtor as their counterparty.  The Debtor had approximately 7,000 Forex Customer accounts

as of the Petition Date.[2]

8.      The Debtor also had precious metals business lines with two sets of customers

thereunder (together, the "Metals Customers").  First, the Debtor entered into over-the-counter

("OTC") precious metals derivatives contracts with certain Metals Customers through which

such customers traded "rolling spot" contracts on various precious metals directly with the

Debtor as their counterparty.[3]  Second, certain Metals Customers of the Debtor held physical

precious metals in their accounts, along with cash balances for the acquisition of physical

precious metals.

---

[2] Additional detail on the Debtor's forex business was set forth in the *Trustee's Motion to Approve
Procedures for Fixing Pricing and Claim Amounts in Connection with the Termination and Liquidation
of Foreign Exchange Customer Agreements*, filed on July 27, 2012. (Dkt. No. 49.)

[3] Additional detail on the Debtor's OTC metals business was set forth in the *Trustee's Motion to Approve
Procedures for Fixing Pricing and Claim Amounts in Connection with the Termination and Liquidation
of Precious Metals Derivatives Customer Agreements*, filed on August 3, 2012. (Dkt. No. 66.)

C.   **The Claims Reconciliation Process**

1.  **The Claims Bar Dates Established by the Court**

9.      By order dated September 26, 2012 ("First Bar Date Order"), this Court fixed

November 16, 2012, as the last day to file a proof of claim in this Case ("Original Bar Date") for

all the Debtor's customers and creditors and January 11, 2013 ("Governmental Bar Date") as the

last day to file a proof of claim in this Case for all governmental units (as defined in 11 U.S.C.

§ 101(27)).

10.     In accordance with the First Bar Date Order, notice of the Original Bar Date and

the Governmental Bar Date and customer and general creditor claim forms were served on all

known claimants.  (*See* Certificate of Service, dated October 2, 2012 at Dkt. No. 234.)

11.     By order dated November 14, 2012, this Court extended the Original Bar Date to

December 14, 2012.  (Dkt. No. 281.)

12.     By order dated January 23, 2013, the Court established March 15, 2013

("Affected Creditor Bar Date"), as the last date for claimants who were first identified on the

Debtor's Amendment to Schedule F filed on January 18, 2013 to timely file proofs of claim.

(Dkt. No. 371.)

13.     On or about January 25, 2013, the Trustee served notice of the Affected Bar Date

to all known claimholders.  (*See* Certificate of Service at Dkt. No. 401.)

2.  **Futures Claims Reconciliation Process**

14.     To date, approximately 14,150 proofs of claim have been filed in this Case

asserting over $738 million claims against the Estate.  The proofs of claim are recorded on the

official claims register maintained by Rust-Omni, the notice and claims agent appointed by the

Court in this Case ("Claims Agent").

15.    The Trustee and his professionals have undertaken a substantial effort to examine and reconcile the claims filed by Futures Customers with the Debtor's books and records on both a customer-by-customer basis and an account-by-account basis.  The Trustee has reconciled almost 10,000 futures related proofs of claim and allowed approximately $394 million in both 4d Customer claims ("Allowed 4d Customer Claims") and 30.7 Customer claims ("Allowed 30.7 Customer Claims," and together with the Allowed 4d Customer Claims, the "Allowed Futures Claims").[4]    All Allowed Futures Claims are identified on the Trustee's website at www.pfgchapter7.com.

16.    A number of Futures Customers have filed proofs of claim as to which the Trustee has objected, either in whole or in part.  The Trustee has notified those claimants that the proofs of claim are objectionable by (i) serving the claimants with a Notice of Trustee's Assessment of Claim ("Assessment(s)") or (ii) serving the claimants with a formal objection to their proofs of claim pursuant to Fed. R. Bankr. P. 3007 ("Objection(s)").[5]

17.    *4d Customer Claims* – As of the filing of this motion, over 7,420 4d Customer claims have been allowed totalling approximately $365 million.  An estimated 55 unresolved 4d Customer claims remain, including 20 claims with pending Assessments or Objections, asserting approximately $3 million as entitled to be treated as Allowed 4d Customer Claims.

18.    *30.7 Customer Claims* – As of the filing of this motion, approximately 600 30.7 Customer claims have been allowed totalling approximately $28 million.  An estimated 15 unresolved 30.7 Customer claims remain, including 5 claims with pending Assessments or

---

[4] The Allowed Futures Claims include proofs of claim filed by Futures Customers that have discrepancies with the Debtor's books and records of less than $1,000.  The Trustee has determined, in his business judgment, that those proofs of claim should be allowed as filed after taking into account the fees and expenses that would be incurred if the Trustee were to object to those proofs of claim.

[5] The First Bar Date Order established the procedures for determining and adjudicating proofs of claim in this Case. (Dkt. No. 200.)

Objections, asserting approximately $2 million as entitled to be treated as Allowed 30.7 Customer Claims.

### D.     The Prior Distributions to Futures Customers

19.     The Trustee and his professionals have been diligently working to do all that is possible to return property to customers, consistent with the law and the records available to the Trustee. In furtherance of that goal, on October 5, 2012, the Court granted the Trustee's request to make interim distributions to Futures Customers pursuant to the *Order Approving Transfer of Funds and Accounts of Certain Commodity Customers of the Debtor to Vision Financial Markets LLC* ("First Distribution Order"). (Dkt. No. 219.)

20.     Pursuant to the First Distribution Order, the Trustee made a bulk transfer to Vision Financial Markets LLC ("Vision") in the approximate amount of $123 million, which represented a return of approximately thirty percent (30%) to 4d Customers (approximately $111.75 million) and a forty percent (40%) return to 30.7 Customers (approximately $11.25 million) (collectively, the "First Distributions"). Vision, in turn, made the First Distributions directly to the Futures Customers.

21.     On December 18, 2013, the Court granted the Trustee's request to make additional interim distributions to Futures Customers pursuant to the *Order Granting Trustee's Second Motion for an Order Approving Distributions to Certain Commodity Customers of the Debtor* ("Second Distribution Order"). (Dkt. No. 2014.) Pursuant to the Second Distribution Order, the Trustee made distributions in the approximate amount of $38.5 million, which represented a return of approximately thirty-seven percent (37%) to 4d Customers (approximately $25.5 million) and an eighty-five percent (85%) return to 30.7 Customers (approximately $13.0 million) ("Second Distributions").

22.     Subsequent to the Second Distribution, the Court granted the Trustee's request to make interim catch-up interim distributions pursuant to the *Order Granting Trustee's Motion for an Order Approving Catch-Up Distributions to Certain Commodity Customers of the Debtor* ("Catch-Up Distribution Order").   (Dkt. No. 2981.)   Pursuant to the Catch-Up Distribution Order, the Trustee made distributions in the approximate amount of $700,000, which enabled in excess of 215 additional holders of newly Allowed Futures Claims to receive their pro rata share of the undistributed portion of the First and Second Distributions ("Catch-Up Distributions," and together with the First Distributions and the Second Distributions, the "Prior Distributions").

23.     A number of 4d Customers and the 30.7 Customers still have not received the full amount of their Prior Distributions.   First, Vision returned approximately $3.3 million of the proposed First Distribution ($3 million of 4d Customer funds and $300,000 of 30.7 Customer funds) to the Trustee because a number of Futures Customers failed to contact Vision within two years after the entry of the First Distribution Order.   Second, a number of 4d Customers' and the 30.7 Customers' claims were allowed after the Catch-Up Distributions.

24.     In sum, the Trustee has already distributed approximately $159 million to holders of Allowed Futures Claims, including $135 million on account of Allowed 4d Customer Claims and $24 million in account of Allowed 30.7 Customer Claims.

25.     As of the filing of this motion, the Trustee is holding approximately $25 million in 4d Customer segregated funds ("4d Estate Funds") available for distribution to 4d Customers and approximately $9 million in 30.7 Customer segregated funds ("30.7 Estate Funds") available for distribution to 30.7 Customers.

**RELIEF REQUESTED**

26.     By this motion, Trustee seeks authority to make cash distributions to holders of

Allowed Futures Claims as follows: (i) up to a 100% distribution to the holders of Allowed 30.7

Customer Claims ("30.7 Distribution(s)") and (ii) up to a forty-four percent (44%) interim

distribution to the holders of Allowed 4d Customers Claims ("4d Distribution(s)"). With respect

to holders of Allowed Futures Claims that received all Prior Distributions, the proposed

incremental distributions will be 15% to Allowed 30.7 Customer Claims and 7% to Allowed 4d

Customer Claims. Holders of Allowed Futures Claims that did not receive the full amount of

their Prior Distributions will receive their pro rata share of the undistributed portion of all Prior

Distributions. The proposed 4d Distributions and 30.7 Distributions are referred to herein

collectively as the "Proposed Distribution(s)."[6]

27.     In addition, the Trustee seeks authority to allocate the $9,756,934.58 in settlement

recoveries ("Settlement Proceeds") from Connie Wassendorf and the Herrmanns to the 4d Estate.

**A.     The Proposed Distributions to Futures Customers**

28.     The Trustee has determined that the Proposed Distributions sought herein are

prudent, consistent with the Bankruptcy Code and the Part 190 Rules and provides prompt and

fair treatment to as many Futures Customers as possible.

29.     Section 766 of the Bankruptcy Code provides that the trustee in a commodity

broker liquidation proceeding "shall distribute customer property ratably to customers on the

basis and to the extent of such customers' allowed net equity claims, and in priority to all other

claims" except for certain administrative expenses. *See* 11 U.S.C. § 766(h). Pursuant to the

Commodity Exchange Act ("CEA"), Congress authorized the CFTC to enact regulations to
implement commodity broker liquidations under subchapter IV of chapter 7. *See* 7 U.S.C. § 24.
The CFTC enacted those regulations in 17 C.F.R. §§ 190.01 *et seq.* ("Part 190 Rules").

30.    The Part 190 Rules, among other things, (a) define what constitutes "customer
property," (17 C.F.R. § 190.08); (b) establish a system of account classes for *pro rata*
distributions (17 C.F.R. §§ 190.01(a), 190.05(a)(2)); and (c) provide a formula for calculating the
"net equity" of a customer's claim (17 C.F.R. § 190.07).

31.    As stated above, "customers" of an FCM liquidating under subchapter IV of the
Bankruptcy Code share *pro rata* in the applicable pool of "customer property" held by the failed
FCM. *See* 11 U.S.C. § 766(h). Section 761(9)(A) of the Bankruptcy Code generally defines a
"customer" of an FCM for this purpose as an entity that holds a claim against the FCM on
account of or arising out of a "commodity contract."[7]  11 U.S.C. § 761(9)(A); *see also* 17 C.F.R.
§ 190.01(k) (adopting § 761(9) as the "customer" definition under the Part 190 Rules).  A

---

[6] As with the Prior Distributions, the Trustee proposes a higher distribution percentage for 30.7
Customers because, as a separate account class, more funds (on a percentage basis) are available in 30.7
Customer segregated accounts as compared to 4d Customer segregated accounts. Further, the relief
requested applies solely to 4d Customers and the 30.7 Customers. Delivery Customers, Forex Customers
and Metals Customers will be addressed separately as part of this Case.

[7] The complete definition of "customer" in section 761(9)(A) of the Bankruptcy Code is as follows:

(i) entity for or with whom such futures commission merchant deals and that holds a
claim against such futures commission merchant on account of a commodity contract
made, received, acquired, or held by or through such futures commission merchant in the
ordinary course of such futures commission merchant's business as a futures commission
merchant from or for a commodity contract account of such entity; or

(ii) entity that holds a claim against such futures commission merchant arising out of—

(I) the making, liquidation, or change in the value of a commodity contract of a kind
specified in clause (i) of this subparagraph;

(II) a deposit or payment of cash, a security, or other property with such futures
commission merchant for the purpose of making or margining such a commodity
contract; or

(III) the making or taking of delivery on such a commodity contract. . . .

"commodity contract" with respect to an FCM includes a "contract for the purchase or sale of a commodity for future delivery on, or subject to the rules of, a contract market or board of trade" and a "commodity option." 11 U.S.C. § 761(4)(A); *see also* 17 C.F.R. § 190.01(h) (adopting § 761(4) as the "commodity contract" definition under the Part 190 Rules).

32.     Pursuant to the Part 190 Rules, a trustee liquidating a commodity broker, such as the Debtor, has a duty to make immediate and to use best efforts to effect the transfer of open customer contracts and equity. *See* 17 C.F.R. § 190.02(e)(1), referencing 17 C.F.R. § 190.06(e) and (f). The Trustee also has a duty to allocate and distribute customer property ratably to Futures Customers on the basis of their net equity claims. *See* 17 C.F.R. § 190.08; 11 U.S.C. § 766(h).

33.     With respect to the Allowed 4d Customer Claims, the Proposed Distributions may also be approved as "partial distribution(s)" made "pursuant to a preliminary plan of distribution approved by the court" under Section 190.08(d)(5) of the Part 190 Rules. *See* 17 C.F.R. § 190.08(d)(5). Moreover, the Part 190 Rules permit the CFTC, in appropriate cases and to protect the public interest, to authorize such transfers as it has here. *See* 17 C.F.R. § 190.06(h) ("Notwithstanding any other provision of this section, in appropriate cases and to protect the public interest, the Commission may:   (1) Prohibit the transfer of customer accounts; or (2) Permit transfers of accounts which do not comply with the requirements of this section."). The Bankruptcy Code and the Part 190 Rules therefore recognize that the Trustee may make a partial distribution to the Futures Customers in order to effectuate the prompt transfer of customer funds in furtherance of the goal of an expeditious and fair liquidation of customer property for the benefit of Futures Customers.

34.     In addition, section 105(a) of the Bankruptcy Code authorizes the Court to "issue

any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title." 11 U.S.C. § 105(a).

35.     The Trustee requests authority to make the Proposed Distributions to holders of

Allowed Futures Claims as the 4d and 30.7 Customer Claims become allowed.  For the purposes

of the Proposed Distributions, Allowed Futures Claims shall not include any of the following:

(i) proofs of claim subject to a pending Objection; (ii) proofs of claim subject to a disputed

Assessment; (iii) proprietary accounts, as defined in the CFTC Regulation 1.3(y), pursuant to the

Debtor's books and records; or (iv) proofs of claim that have not been finally reconciled by the

Trustee.

36.     As authorized under the Catch-Up Distribution Order, the Trustee seeks approval

to use deposit accounts at Union Bank for the purpose of making the Proposed Distributions

("Union Bank Distribution Accounts").  The Trustee intends to transfer an amount sufficient to

fund the Proposed Distributions from the Trustee's operating accounts into the Union Bank

Distribution Accounts to fund the Proposed Distributions.   The Trustee estimates that the

Proposed Distributions will require approximately $33.5 million to be transferred to the Union

Bank Distribution Accounts.

37.     Importantly, Union Bank and the Claims Agent identified a number of attempts to

negotiate counterfeit checks that were presented for payment at Union Bank in connection with

the Prior Distributions.  In response to that fraudulent activity, the Trustee, Union Bank and the

Claims Agent took a number of steps to ensure that the counterfeit checks were not negotiated.

As an additional measure, the Trustee requests authority to implement a "positive pay" payment

system for the Proposed Distributions which will allow the Claims Agent to systematically

authorize payment of each check upon presentment to Union Bank. The Trustee estimates that fees and expenses associated with implementing the "positive pay" payment system will be approximately $1,000.

38.      The Trustee proposes to make the Proposed Distributions directly to the holders by check utilizing the services of the Claims Agent. Alternatively, in the event that a Holder is unable to negotiate the check received from Claims Agent, the Trustee requests authority to wire transfer the funds to the Holder's bank account. All costs and expenses incurred by the Estate related to cancelling a check and either (i) initiating a wire transfer or (ii) reissuing a check will be paid for by the applicable claimant and deducted from the Proposed Distribution. In order to reduce administrative expenses, the Trustee requests authority to withhold, in his sole discretion, any Proposed Distribution if (x) the amount to be distributed on account of an Allowed 4d Customer Claim is less than $100 or (y) the Prior Distributions were returned to the Claims Agent as undeliverable.

39.      With respect to a Proposed Distribution to any Holder that is either (i) not negotiated by the Holder within ninety days (90) of the date of the check or (ii) undeliverable by virtue of a bad address, bad transfer instructions or any other reason that prevents the Trustee from properly transferring the Proposed Distribution to the Holder, the Trustee, in his sole discretion, may withhold such Proposed Distribution until the Court authorizes a subsequent distribution to such Holder. If a dispute arises as to the identity of a Holder who is to receive a Proposed Distribution, the Trustee may, his sole discretion, withhold the Proposed Distribution until the disposition thereof can be determined by the Bankruptcy Court or by written agreement among the interested parties to such dispute.

40.     In addition, the Trustee requests that the Court establish 11:59 p.m. (central standard time) on December 4, 2014, as the record date for the Proposed Distributions ("Record Date"). As of the Record Date, the claims register shall be closed and the Trustee shall have no obligation to recognize transfers of any claims occurring after the Record Date for the purposes of the Proposed Distribution. The Proposed Distribution checks will be mailed to the Holder at the address contained in the Proof of claim as of the Record Date.

41.     The Trustee submits that the Proposed Distributions proposed herein are fair and reasonable, consistent with the Bankruptcy Code and the Part 190 Rules, and will mitigate the harm suffered by the Futures Customers by providing them with access to some or all of their assets during the claims administration process. Moreover, because the Trustee proposes to reserve approximately $7 million in 4d Estate Funds (after accounting for the allocation of the Settlement Proceeds to the 4d Estate as discussed below) and approximately $4 million in 30.7 Estate Funds for claims that subsequently become Allowed Futures Claims, no customer should be "overpaid" or prejudiced by the relief requested herein. Accordingly, it is reasonable and appropriate to authorize the Trustee to make the Proposed Distributions directly to the holders by check or wire transfer, utilizing the services of the Claims Agent.

**B.      Authorization to Allocate the Settlement Proceeds to the 4d Estate**

42.     The Trustee also seeks authority to allocate the Settlement Proceeds to the 4d Estate. The Trustee is authorized to make these proposed allocations under the Bankruptcy Code and the Part 190 Rules because the Settlement Proceeds are directly related to the 4d Customers' property.

43.     Pursuant to section 4d of the CEA, the Debtor as an FCM, was required to maintain at least one segregated account to hold the assets of its 4d Customers separate and apart

from its own funds as well as any funds of 30.7 Customers. Prior to the Petition Date, the Debtor maintained a segregated account, with an account number ending 1845 ("Customer Seg. Account"), at U.S. Bank, N.A. Shortly before the commencement of this case, the CFTC filed a lawsuit in the District Court alleging that the Debtor and its founder, Russell Wasendorf, Sr., misappropriated more than $200 million of customer funds from the Customer Seg. Account and concealed such theft by submitting false reports to the CFTC, all in violation of various provisions of the CEA.

44.    On August 7, 2014, the Court entered an order authorizing the Trustee to compromise certain claims against the Herrmanns in exchange for their payment of $7.25 million. (Dkt. No. 2860.) The settlement payment was made to the Trustee to settle claims that customer property was improperly transferred to the Herrmanns from the Customer Seg. Accounts prior to the Petition Date. (Dkt. No. 2276.)

45.    On March 27, 2014, the Court also entered an order authorizing the Trustee to compromise certain claims against Connie Wassendorf in exchange for her payment of $2.85 million. Of that amount, the Trustee has determined that the $2,506,934.58 of the settlement payment related to funds that were improperly transferred from the Customer Seg. Account. (*See* Dkt. Nos. 2393, 2433.)

46.    The Bankruptcy Code and the Part 190 Rules recognize that, in appropriate cases, the Court may approve the Trustee's allocation of estate property to certain account classes. The CEA authorizes the CFTC to provide by rule or regulation, "that certain cash, securities, other property, or commodity contracts are to be included in or excluded from customer property." 7 U.S.C. § 24(a)(1). The Settlement Proceeds that the Trustee seeks to allocate is property of the Debtor's estate that "must be allocated among account classes and between customer classes as

provided in" the Part 190 Rules.  17 C.F.R. § 190.08.  Property "which is segregated on behalf of a specific account class, or readily traceable on the filing date to customers of such account class, must be allocated to the customer estate of the account class for which it is segregated or to which it is readily traceable."  17 C.F.R. § 190.08(c)(1).  Further, customer property includes property removed from the Customer Seg. Account that was subsequently "recovered by the avoidance powers of the trustee" or "[w]as unlawfully converted but is part of the debtor's estate."  17 C.F.R. § 190.08(a)(1)(ii)(D) and (F).

47.     Here, the Settlement Payments are directly traceable to the 4d Estate as they are payments made to the Trustee in settlement of claims that customer property was improperly transferred from the Customer Seg. Account prior to the Petition Date.  The allocation of the Settlement Proceeds to the 4d Estate for distribution to 4d Customers is consistent with the Part 190 Rules and is in the best interests of Debtor's Futures Customers.  Accordingly, the proposed allocation is an exercise of the Trustee's sound business judgment that should be approved by the Court.

## NOTICE

48.     Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) the CFTC; and (c) all parties who have filed a request for service of notices in this Case.  The Trustee has also posted a notice of the Motion on the Trustee's website (www.pfgchpter7.com).

WHEREFORE, the Trustee respectfully requests that this Court enter an Order, in the

form attached hereto, granting the relief requested herein and such other and further relief as is

just and proper under the circumstances.

Respectfully submitted,

Ira Bodenstein, not personally, but as chapter
7 trustee for the estate of Peregrine Financial
Group, Inc.

Dated:  December 4, 2014                    By: ___ /s/*Allen J. Guon*_____
                                                     One of his attorneys

Robert M. Fishman (#3124316)
Allen J. Guon (#6244526)
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL  60654
Phone: (312) 541-0151

{10403-001 MOT A0391343.DOC 4}                    16